Jacob Huebert, Bar # 17768
Scharf-Norton Center for Constitutional Litigation at the
**GOLDWATER INSTITUTE**
500 E. Coronado Road
Phoenix, Arizona 85004
Telephone: 602.462.5000
litigation@goldwaterinstitute.org
*Attorney for Plaintiff*

---

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| AMY POMEROY,<br><br>    Plaintiff,<br><br>UTAH STATE BAR; JOHN C. BALDWIN, Executive Director, Utah State Bar; HEATHER FARNSWORTH, President, Utah State Bar; HEATHER THUET, President Elect, Utah State Bar; MARTY MOORE, 1st Division Commissioner, Utah State Bar; JOHN W. BRADLEY, 2nd Division Commissioner, Utah State Bar; CHRYSTAL MANCUSO-SMITH, 3rd Division Commissioner, Utah State Bar; MICHELLE QUIST, 3rd Division Commissioner, Utah State Bar; MARK MORRIS, 3rd Division Commissioner, Utah State Bar; MARK PUGSLEY, 3rd Division Commissioner, Utah State Bar; TRACI GUNDERSEN, 3rd Division Commissioner, Utah State Bar; ANDREW MORSE, 3rd Division Commissioner, Utah State Bar; TOM SEILER, 4th Division Commissioner, Utah State Bar; KRISTIN WOODS, 5th Division Commissioner, Utah State Bar; RICK HOFFMAN, Public Member Commissioner, Utah State Bar; SHAWN NEWELL, Public Member Commissioner, Utah State Bar,<br><br>    Defendants. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Civil No. _____<br><br>Judge _____ |

1.      This civil rights lawsuit seeks to protect the First and Fourteenth Amendment rights of Utah attorneys who have been forced to become members of the Utah State Bar ("USB") and the Utah Bar Foundation ("UBF") and to subsidize political and ideological speech by the USB that they do not wish to support.

2.      The State of Utah requires attorneys to join and pay fees to the USB, a bar association, as a condition of being allowed to practice law in the state. *See* Utah Judicial Council Code of Judicial Admin. ("CJA") Rules 14-101, 14-102(a)(1), 14-107, 14-209, 14-802(a).

3.      The State of Utah also makes all attorneys who are USB members automatically members of the UBF. CJA Rule 14-209.

4.      Utah's requirements that attorneys join the USB and UBF violate attorneys' First Amendment rights to free speech and association, and are not necessary to regulate the legal profession or improve the quality of legal services in Utah.

5.      The USB's collection and use of mandatory bar dues to subsidize political and ideological speech without attorneys' affirmative consent violates their First Amendment right to choose what private speech and association they will and will not support, and is not necessary to regulate the legal profession or improve the quality of legal services in Utah.

6.      Further, even if one assumes mandatory bar membership and dues are not inherently unconstitutional, the USB fails to provide essential safeguards to ensure that

attorneys' dues are not used for activities that are not germane to the USB's purpose of improving the quality of legal services by regulating the legal profession.

7.      This lawsuit therefore asks this Court to declare mandatory USB and UBF membership unconstitutional and to order Defendants to stop forcing attorneys to join the USB and subsidize its speech without their affirmative consent. Alternatively, at a minimum, this lawsuit asks this Court to order Defendants to stop collecting mandatory fees in the absence of sufficient procedures to protect attorneys from being forced to subsidize USB speech and other activities that are not germane to improving the quality of legal services and regulating the legal profession.

## JURISDICTION AND VENUE

8.      This action is brought under 42 U.S.C. §§ 1983 and 1988.

9.      This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343.

10.      This Court has authority to grant declaratory and other relief under 28 U.S.C. §§ 2201 and 2202.

11.      Venue is appropriate under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

12.      Plaintiff Amy Pomeroy is a citizen of the United States and resides in Orem, Utah. Plaintiff Pomeroy is a duly licensed attorney under the laws of Utah and is a

member of the USB solely because membership is a mandatory prerequisite to practice law in the State of Utah.

13.     Defendant Utah State Bar is a Utah non-profit corporation to which Utah attorneys are compelled to pay an annual fee as a condition of practicing law in Utah.

14.     Defendant John C. Baldwin is Executive Director of the Utah State Bar. As the USB's Executive Director, Defendant Baldwin is responsible for enforcing the state's requirement that attorneys join and pay fees to the USB as a condition of practicing law in Utah. *See* CJA Rule 14-107(b)(2).

15.     Defendant Heather Farnsworth is President of the Utah State Bar. Together with the other members of the Board of Commissioners of Utah State Bar Commissioners ("Board"), Defendant Farnsworth is responsible for enforcing the state's requirement that attorneys become members of, and pay fees to, the USB as a condition of practicing law in Utah. *See* CJA Rule 14-111(a).

16.     Defendant Heather Thuet is President-Elect of the Utah State Bar.

17.     Defendant Marty Moore is a member of the Board, representing the 1st Division.

18.     Defendant John W. Bradley is a member of the Board, representing the 2nd Division.

19.     Defendant Chrystal Mancuso-Smith is a member of the Board, representing the 3rd Division.

20.     Defendant Michelle Quist is a member of the Board, representing the 3rd Division.

21.     Defendant Mark Morris is a member of the Board, representing the 3rd Division.

22.     Defendant Mark Puglsey is a member of the Board, representing the 3rd Division.

23.     Defendant Traci Gundersen is a member of the Board, representing the 3rd Division.

24.     Defendant Andrew Morse is a member of the Board, representing the 3rd Division.

25.     Defendant Tom Seiler is a member of the Board, representing the 4th Division.

26.     Defendant Kristin Woods is a member of the Board, representing the 5th Division.

27.     Defendant Rick Hoffman is a "public" member of the Board.

28.     Defendant Shawn Newell is a "public" member of the Board.

29.     All individual Defendants are sued in their official capacities.

## FACTS

**Utah's Mandatory Bar Association Membership and Fees**

30.     Utah compels every attorney licensed in Utah to be a member of the USB in order to practice law in the state. CJA Rules 14-101, 14-102, 14-802.

31.     Utah also compels attorneys licensed in the state to pay annual dues to the USB. CJA Rules 14-107, 14-111(a), 14-207, 14-716; *see also In re Discipline of Sonnenreich*, 86 P.3d 712, 718-19 ¶ 17 (Utah 2004) (noting the "clear requirement" that Utah attorneys pay an annual fee to the USB).

32.     If an attorney fails to pay the annual fee to the USB, the USB administratively suspends the attorney's license to practice law, which prohibits the attorney from practicing law in the state. CJA Rules 14-111(a).

33.     As a Utah attorney, Plaintiff Amy Pomeroy is compelled to become a member of the USB and to pay an annual fee to the USB as a condition of engaging in her profession.

34.     Plaintiff Pomeroy has paid annual dues to the USB since approximately 2014.

35.     The USB and the members of its Board—namely, Defendants Farnsworth, Thuet, Moore, Bradley, Mancuso-Smith, Quist, Morris, Pugsley, Gundersen, Morse, Seiler, Woods, Hoffman, and Newell (collectively, the "USB Board Members")—act

under color of state law to enforce Utah's rules requiring membership and funding of the USB as a condition of practicing law in the State of Utah.

**The USB's Use of Mandatory Fees for Political and Ideological Speech**

36.     The USB Board Members use mandatory USB member dues on behalf of the USB, acting under color of state law. CJA Rules 14-109, 14-207(d).

37.     The USB uses members' mandatory dues to engage in speech, including political and ideological speech.

38.     CJA Rule 14-106(a) "authorize[s] and direct[s]" the Board "to study and provide assistance on public policy issues and to adopt positions of behalf of the Board on public policy issues."

39.     Rule 14-106(a) also authorizes the Board to, among other things, "adopt a position in support of or in opposition to a policy initiative, to adopt no position on a policy initiative, or to remain silent on a policy initiative."

40.     Under Rule 14-106(a)(1), public policy issues on which the USB may take positions include "issues concerning the courts of Utah, procedure and evidence in the courts, the administration of justice, the practice of law, and matters of substantive law on which the collective expertise of lawyers has special relevance and/or which may affect an individual's ability to access legal services or the legal system."

41.     Under these Rules, the USB has advocated for and against both procedural and substantive proposed state legislation.

42.     The January/February 2021 issue of the USB's *Utah Bar Journal* states: "In recent years, the Bar has played an active role in major public policy debates, such as taxation of legal services, whether the supreme court should regulate the practice of law, and what criteria should be considered when filling judicial vacancies. As our state continues to grow and change, we anticipate there will be other major issues that will require the Bar's input."

43.     In 2019, the USB opposed a proposed "Tax Equalization and Reduction Act" (H.B. 441), which would have modified the state's tax system in various ways, because it would have imposed a tax on legal services.

44.     In the July/August 2019 issue of the USB's *Utah Bar Journal* publication, the USB's then-President stated that "the Bar took a strong stand" against the proposed tax, that the USB "is continuing to be actively involved in monitoring and opposing a sales tax on legal services," and that the USB "ask[s] all of you [USB members] to stay involved and that you encourage your clients to do the same."

45.     The May/June 2018 issue of the *Utah Bar Journal* reported that the USB "had significant influence on the language and structure" of legislation regarding the state attorney general's ability to invoke a potential conflict of interest or the attorney-client privilege to withhold release of an opinion requested by the legislature.

46.     That issue of the *Utah Bar Journal* also stated that "the 2018 General Session [of the Utah State Legislature] was successful for the Utah bar as our leaders

influenced the language of legislation and enhanced the bar's relationship with lawmakers and staff."

47.    The USB has also opposed measures that would alter the way Utah selects judges, including a 2019 proposed constitutional amendment that would have replaced the state's current method (appointment by the governor from nominees certified by a nominating commission, subject to Utah Senate approval and retention elections) with nonpartisan elections.

48.    The USB engages lobbyists to advocate for and against proposed legislation in the Utah State Legislature.

49.    In advocating for and against proposed legislation, the USB and its lobbyists purport to represent the USB's membership.

50.    Recent issues of the *Utah Bar Journal*, funded with members' mandatory dues, include statements that take or publicize positions on current controversies, including but not limited to an article by the USB's president in the March-April 2021 issue asserting the importance of pursuing "equity" as distinct from "equality"; an article in that same issue calling for courtrooms to include a "safe space" in which allegations of unfairness will not be met with "defensiveness and denial"; an article in that same issue reviewing a book proposing criminal penalties "up to and including incarceration" for any person "who is made aware of a sexual assault but focuses on protecting the

institution in which it occurs rather than the survivor of the assault"; and articles invoking the concept of "implicit bias."

**The USB's Dues Refund Procedure**

51.     The Utah State Bar occasionally publishes notices of members' right to receive a rebate of the portion of their bar dues used for lobbying and legislative matters—but it does so inconspicuously, buried deep within the *Utah Bar Journal*.

52.     When the *Utah Bar Journal* includes such a notice, nothing on the cover or in the table of contents informs a reader of its presence, and nothing else calls the notice to readers' attention.

53.     In the March-April 2021 *Utah Bar Journal*, the following "Notice of Legislative Positions Taken By Bar and Availability of Rebate" and "Tax Notice" were published on page 56:

## Notice of Legislative Positions Taken by Bar and Availability of Rebate

Positions taken by the Bar during the 2021 Utah Legislative Session and funds expended on public policy issues related to the regulation of the practice of law and the administration of justice are available at www.utahbar.org/legislative. The Bar is authorized by the Utah Supreme Court to engage in legislative and public policies activities related to the regulation of the practice of law and the administration of justice by Supreme Court Rule 14-106 which may be found at www.utcourts.gov/resources/rules/ucja/view.html?title=Rule 14-106. Lawyers may receive a rebate of the proportion of their annual Bar license fee expended for such activities during April 1, 2020 through March 30, 2021, by notifying

Financial Director Lauren Stout at lauren.stout@utahbar.org.

The proportional amount of fees provided in the rebate include funds spent for lobbyists and staff time spent lobbying; travel for a Bar delegate to the American Bar Association House of Delegates; and Utah legislative lobbyist registration fees for the Bar's Executive Director and Assistant Executive Director. Prior year rebates have averaged approximately $7.80. The rebate amount will be calculated April 1, 2021, and we expect the amount to be consistent with prior years.

## Tax Notice

Pursuant to Internal Revenue Code 6033(e)(1), no income tax deduction shall be allowed for that portion of the annual license fees allocable to lobbying or legislative-related expenditures. For the tax year 2020, that amount is 2.95% of the mandatory license fee.

54.     The "Notice" includes the URL for a website where USB members supposedly can obtain information on positions the USB has taken in 2021; in fact, as of the date of the filing of this Complaint, the page contains no such information, nor does it contain any information about "funds expended" in 2021 or any other year.

55.     Page 55 of the May/June 2020 *Utah Bar Journal* contained the following "Notice of Legislative Positions Taken by Bar and Availability of Rebate," but with no projected rebate amount and no "Tax Notice":

---

### Notice of Legislative Positions Taken by Bar and Availability of Rebate

Positions taken by the Bar during the 2020 Utah Legislative Session and funds expended on public policy issues related to the regulation of the practice of law and the administration of justice are available at www.utahbar.org/legislative. The Bar is authorized by the Utah Supreme Court to engage in legislative and public policies activities related to the regulation of the practice of law and the administration of justice by Supreme Court Rule 14-106 which may be found at www.utahbar.org/utcourts_14-106. Lawyers may receive a rebate of the proportion of their annual Bar license fee expended for such activities during April 1, 2019 through March 30, 2020 by notifying Financial Director Lauren Stout at lauren.stout@utahbar.org.

The proportional amount of fees provided in the rebate include funds spent for lobbyists and staff time spent lobbying; a breakfast meeting with lawyer legislators; travel for the Bar's three delegates to the American Bar Association House of Delegates; travel by Bar leadership to lobby in Washington DC with the American Bar Association; the Bar's contribution to the Utah Center for Legal Inclusion; and Utah legislative lobbyist registration fees for the Bar's Executive Director and Assistant Executive Director. The rebate amount will be calculated April 1, 2020 and we expect the amount to be consistent with prior years.

---

56.     In fact, the URL provided in this Notice did not and does not provide information about "funds expended on public policy issues."  Regarding the 2020 Utah Legislative Session, it only includes a list of proposed items of legislation and whether the USB supported or opposed them.

57.     Page 53 of the March-April 2019 issue of the *Utah Bar Journal* contained the following "Notice of Legislative Rebate" and "Tax Notice" with minimal information about the USB's activities or where readers could learn about them:

11

**Notice of Legislative Rebate**

Bar policies provide that lawyers may receive a rebate of the proportion of their annual Bar license fee expended from April 1, 2018 to March 30, 2019 for lobbying and any legislative-related expenses by notifying Executive Director John C. Baldwin, 645 South 200 East, Salt Lake City, Utah 84111 or at jbaldwin@utahbar.org.

**Tax Notice**

Pursuant to Internal Revenue Code 6033(e)(1), no income tax deduction shall be allowed for that portion of the annual license fees allocable to lobbying or legislative-related expenditures. For the tax year 2018, that amount is 1.65% of the mandatory license fee.

58.     The USB published substantially similar notices together under the heading "Notice of Legislative Rebate" in the March-April 2018 *Utah Bar Journal*—in the lower left corner of page 46, which also contained a list of certain Bar Commission activities, a notice of an individual's petition for reinstatement to the Bar, and a notice regarding online license renewal:

## State Bar News

### Commission Highlights

The Utah State Bar Board of Commissioners received the following reports and took the actions indicated during the January 12, 2018 Commission Meeting held at the Law & Justice Center in Salt Lake City.

1. The Bar Commission voted to nominate **Herm Olsen** to run for Bar President-elect.

2. The Bar Commission voted to select **Ellen Maycock** to receive the Dorathy S. Merrill Brothers Award.

3. The Bar Commission voted to select **Hon. Augustus G. Chin** to receive the Raymond S. Uno Award.

4. The Bar Commission voted to approve the charge to the Access to Justice Coordinating Committee; to appoint **Retired Justice Christine Durham** as a Co-Chair of the Committee; and provisionally appoint **Amy Sorenson** as a Co-Chair.

5. The Bar Commission voted to appoint **Judge Eve Furse** as the 2019 Summer Convention Co-Chair.

6. The Bar Commission voted to appoint **Josh Player** as NLTP Committee Vice-Chair.

7. The Bar Commission voted to approve LicensedLawyer marketing plan and expenditure.

8. The Minutes of the December 8, 2017 Commission Meeting were approved by consent.

9. The Bar Commission approved the creation of the Entertainment Law Section.

The minute text of this and other meetings of the Bar Commission are available at the office of the Executive Director.

### Notice of Legislative Rebate

Bar policies provide that lawyers may receive a rebate of the proportion of their annual Bar license fee which has been expended during the fiscal year for lobbying and any legislative-related expenses by notifying Executive Director John C. Baldwin, 645 South 200 East, Salt Lake City, Utah 84111 or at jbaldwin@utahbar.org.

The amount which was expended on lobbying and legislative-related expenses in the preceding fiscal year was 1.67% of the mandatory license fees. Your rebate would total: Active Status – $7.09; Active – Admitted Under 3 Years Status – $4.17; Inactive with Services Status – $2.50; and Inactive with No Services Status – $1.75.

### Notice of Petition for Reinstatement to the Utah State Bar by David B. Oliver

Pursuant to Rule 14-525(d), Rules of Lawyer Discipline and Disability, the Utah State Bar's Office of Professional Conduct hereby publishes notice that David B. Oliver has filed an application for reinstatement in *In the Matter of the Discipline of David B. Oliver*, Third Judicial District Court, Civil No. 070909858. Any individuals wishing to oppose or concur with the application are requested to do so within thirty days of the date of this publication by filing notice with the District Court.

### Mandatory Online Licensing

The annual online licensing renewal process will begin June 4, 2018, at which time you will receive an email outlining renewal instructions. This email will be sent to your email address of record. Utah Supreme Court Rule 14-507 requires lawyers to provide their current e-mail address to the Bar. If you need to update your email address of record, please contact onlineservices@utahbar.org.

Renewing your license online is simple and efficient, taking only about five minutes. With the online system you will be able to verify and update your unique licensure information, join sections and specialty bars, answer a few questions, and pay all fees.

No separate licensing form will be sent in the mail. You will be asked to certify that you are the licensee identified in this renewal system. Therefore, this process should only be completed by the individual licensee, not by a secretary, office manager, or other representative. Upon completion of the renewal process, you will receive a licensing confirmation email. If you do not receive the confirmation email in a timely manner, please contact licensing@utahbar.org.

License renewal and fees are due July 1 and will be late August 1. If renewal is not complete and payment received by September 1, your license will be suspended.

59.   In the March-April 2017 *Utah Bar Journal*, the USB published the "Tax

Notice" at the bottom of page 42, below a list of USB 2017 Spring Convention sponsors

and exhibitors, and published the "Notice of Legislative Rebate" at the bottom of page

49, below the second page of a list of attorneys recognized for pro bono work:



60.   The USB does not provide a means by which members may prevent their

dues from being used for lobbying and other legislative activities before the fact; it only

offers partial rebates after members' fees have already been used for these activities.

61.   The USB does not provide members with information about how it

determines which expenditures should be classified as for "lobbying and legislative-

related activities."

14

62.     The notices of legislative positions currently on the "Legislative Positions" page of the USB website simply state whether the USB supported or opposed particular items of proposed legislation that were before the Utah Legislature; they do not state the reasons for the USB's positions; nor do they state whether the USB engaged in any advocacy on issues of public policy apart from the listed bills; nor do they state anything about the amount of "funds expended" on such matters, despite the statements in the March/April 2021 and March/April 2020 notices that this information would be provided there.

63.     The USB has not established procedures by which members may object to, or receive a rebate for, USB expenditures other than those the USB has deemed to be "lobbying and legislative-related activities."

64.     The annual budget the USB makes available to members does not identify any specific expenditures the USB has made or proposed to make; it only identifies general categories of expenditures.

65.     The annual budget the USB makes available to members does not state whether any past or proposed expenditures of member dues were or are germane to the purpose of improving the quality of legal services and regulating the legal profession.

66.     The USB does not provide members with detailed information about its expenditures that would allow members to determine whether any past or proposed

expenditures of member fees were or are germane to improving the quality of legal services and regulating the legal profession.

**Plaintiff's Injury**

67.     Plaintiff Amy Pomeroy does not wish to associate with the USB or its political or ideological speech, but she has been required to do so to be allowed to practice law in Utah.

68.     Plaintiff Amy Pomeroy opposes the USB's use of any amount of her mandatory fees to fund any amount of political or ideological speech, regardless of its viewpoint, including but not limited to the examples set forth above, but she has been without effective means to prevent it.

69.     Plaintiff Amy Pomeroy also does not wish to associate with or subsidize the USB's "factual" speech, even if it does not include overt political or ideological advocacy. She wishes to decide for herself which charitable, advocacy, and/or trade organizations she will and will not associate with and contribute to.

70.     The USB declares itself to be the official state organization of the entire legal profession. For example, on its website it identifies itself as "an organization of Utah's 12,000 lawyers and judges" and declares that its "mission [is] representing lawyers in Utah." The website also states that "The membership of the Bar includes active and inactive lawyers, and lawyers who reside within and outside the State of Utah. In order to practice law in the State of Utah, it is necessary to be a member of the Utah

State Bar." Nothing on the website indicates that there are attorneys such as Plaintiff

Pomeroy who dissent from the USB, do not wish to be members of or associated with it,

and do not necessarily agree with the positions it takes and opinions it expresses.

71.    Utah's requirement that all attorneys join the USB injures Plaintiff Amy

Pomeroy because she does not wish to associate with the USB or with its speech,

including but not limited to political ideological speech, and does not wish to subsidize

the USB or its speech. But for the requirement, she would not be a member.

72.    Utah's requirement that all attorneys pay dues to the USB injures Plaintiff

Amy Pomeroy because she does not wish to fund the USB's speech, including but not

limited to political and ideological speech, and other activities. But for the requirement,

she would not do so.

73.    The USB's lack of safeguards to ensure that members are not required to

pay for political and ideological speech and other activities not germane to regulating the

legal profession or improving the quality of legal services injures Plaintiff Amy Pomeroy

because she does not want to fund such activities in any amount.

74.    Utah's requirement that all attorneys be members of the UBF injures

Plaintiff Amy Pomeroy because she does not wish to associate with the UBF or any

political or ideological speech or other activities that it may engage in; she wishes to

decide for herself which charitable and advocacy organizations she will and will not

associate with and contribute to.

**Injunctive Relief Allegations**

75.    Due to Defendants' enforcement of the challenged laws and rules described above, Plaintiff and others similarly situated are and will continue to be denied the right to refrain from being members of the USB as a condition of practicing law in Utah and the right to refrain from subsidizing the USB's speech.

76.    If not permanently enjoined by this Court, Defendants and their agents will continue to implement the challenged rules or other similar policies and practices, which deprive Plaintiff of her constitutionally protected rights to free speech and freedom of association.

77.    Thus the challenged laws and rules are causing, and will continue to cause, Plaintiff to suffer irreparable injury, including but not limited to deprivation of her freedom of speech and freedom of association rights. Plaintiff has no plain, speedy, and adequate remedy at law for such an injury.

78.    Accordingly, injunctive relief is appropriate.

**Declaratory Relief Allegations**

79.    An actual and substantial controversy exists between Plaintiff and Defendants as to their respective legal rights and duties. Plaintiff contends, pursuant to 42 U.S.C. § 1983, that both on their face and as applied to Plaintiff, the challenged laws and

rules violate the First and Fourteenth Amendments. Plaintiff is informed and believes, and on that basis alleges, that Defendants contend otherwise on all counts.

80.     Accordingly, declaratory relief is appropriate.

## **FIRST CLAIM FOR RELIEF**

**Compelled membership in the USB violates attorneys' First and Fourteenth Amendment rights to free association and free speech.**

81.     The allegations in the preceding paragraphs are incorporated by reference as if fully set forth here.

82.     The First and Fourteenth Amendments protect not only the freedom of association but also the freedom not to associate.

83.     The First and Fourteenth Amendments protect the freedom of speech, which includes the right to avoid subsidizing the speech of other private speakers.

84.     By its very nature, a mandatory bar association such as the USB violates these rights.

85.     Mandating membership in a bar association that engages in political and ideological speech violates the First and Fourteenth Amendment rights to freedom of association, freedom of speech, or both.

86.     In the alternative, mandating membership in a bar association that engages in political and ideological speech that is not germane to improving the quality of legal services or regulating the legal profession violates the First and Fourteenth Amendment right to freedom of association, freedom of speech, or both.

19

87.     Mandatory associations, particularly mandatory associations for expressive purposes, are permissible only when they serve a compelling state interest that the government cannot achieve through other means significantly less restrictive of First Amendment freedoms.

88.     The only state interests that a mandatory bar association can plausibly serve are regulating the legal profession and improving the quality of legal services.

89.     The state can readily use means significantly less restrictive of First Amendment freedoms than mandatory bar association membership to regulate the legal profession and improve the quality of legal services.

90.     For example, the State of Utah could regulate the legal profession directly, or through an agency under its jurisdiction, without requiring attorneys to join or pay a bar association, as at least 18 other states do.

91.     By failing to use means significantly less restrictive of associational freedoms than a mandatory association, Defendants maintain and actively enforce a set of laws, practices, procedures, and policies that deprive Plaintiff Amy Pomeroy of her rights of free speech and free association in violation of the First and Fourteenth Amendments.

92.     This deprivation of constitutional rights is causing Plaintiff Amy Pomeroy to suffer irreparable injury for which there is no adequate remedy at law. Unless this deprivation of rights is enjoined by this Court, Plaintiff will continue to suffer irreparable harm.

93.     Plaintiff is entitled to declaratory and injunctive relief against Defendants' continued enforcement and maintenance of these unconstitutional laws, practices, procedures, and policies, and is entitled to an award of attorney fees. *See* 28 U.S.C. §§ 2201, 2202; 42 U.S.C. §§ 1983, 1988.

## SECOND CLAIM FOR RELIEF

**The collection and use of mandatory bar dues to subsidize the USB's speech—including its political and ideological speech—violates attorneys' First and Fourteenth Amendment rights to free speech and association.**

94.     The allegations in the preceding paragraphs are incorporated by reference as if fully set forth here.

95.     The USB collects and uses mandatory bar fees to subsidize its speech, including its political and ideological speech as described above, without attorneys' affirmative consent.

96.     The USB provides no way for attorneys to avoid having their fees used to subsidize its speech, including its political and ideological speech, except by seeking a refund after the fact.

97.     The state could readily serve its interest in improving the quality of legal services and regulating the legal profession without forcing attorneys to subsidize the USB's speech, including its political and ideological speech.

98.     The state could improve the quality of legal services and regulate the legal profession without requiring attorneys to fund a bar association at all. It could adopt

measures to improve the quality of legal services and regulate the legal profession directly, or through an agency under its jurisdiction, as at least 18 other states do.

99.   Alternatively, Utah could require that the USB use mandatory bar dues only for regulatory activities, as California and Nebraska have done.

100.   Because the state could readily serve its interest in improving the quality of legal services in ways significantly less restrictive of free speech and association, the USB violates the First and Fourteenth Amendments by collecting and using mandatory bar dues to subsidize *any* of its speech.

101.   Alternatively, the USB violates the First and Fourteenth Amendments by collecting and using mandatory bar dues to subsidize its political and ideological speech.

102.   At the very least, the USB violates the First and Fourteenth Amendments by collecting and using mandatory bar dues to subsidize its speech and other activities that are not germane to improving the quality of legal services and regulating the legal profession.

103.   At a minimum, to protect members' First Amendment rights, the USB must create an "opt-in" system for attorneys to subsidize its speech and non-germane activities; it cannot require attorneys to opt out. *See Janus v. AFSCME*, 138 S. Ct. 2448, 2486 (2018). Unless an attorney provides affirmative consent, his or her fees cannot be used to subsidize the USB's non-germane activities or its speech, including but not limited to its political and ideological speech.

104.    Under existing law, Defendants maintain and enforce a set of laws, practices, procedures, and policies that are not adequate to ensure that mandatory dues will not be used for the impermissible purposes described above without affirmative consent.

105.    Accordingly, Defendants are currently maintaining and actively enforcing a set of laws, practices, procedures, and policies that deprive Plaintiff Amy Pomeroy of her rights of free speech and free association in violation of the First and Fourteenth Amendments.

106.    This deprivation of constitutional rights is causing Plaintiff Amy Pomeroy to suffer irreparable injury for which there is no adequate remedy at law. Unless this deprivation of rights is enjoined by this Court, Plaintiff will continue to suffer irreparable harm.

107.    Plaintiff Amy Pomeroy is entitled to declaratory and injunctive relief against Defendants' continued enforcement of these unconstitutional laws, practices, procedures, and policies, and is entitled to an award of attorney fees. *See* 28 U.S.C. §§ 2201, 2202; 42 U.S.C. §§ 1983, 1988.

## THIRD CLAIM FOR RELIEF

**The USB violates attorneys First and Fourteenth Amendment rights by failing to provide safeguards to ensure mandatory dues are not used for impermissible purposes.**

108.    The allegations in the preceding paragraphs are incorporated by reference as if fully set forth here.

109.    Plaintiff pleads this claim in the alternative to her first and second claims for relief.

110.    To the extent mandatory bar fees are constitutional at all, the Supreme Court has required bar associations such as the USB to ensure that such fees are used only for activities germane to improving the quality of legal services and regulating the legal profession. *See Keller v. State Bar of Cal.*, 496 U.S. 1, 14 (1990).

111.    To protect the rights of USB members and ensure mandatory member fees are used only for chargeable expenditures, *Keller* requires the USB to institute safeguards that provide, at a minimum: (1) notice to members, including an adequate explanation of the basis for the dues and calculations of all non-chargeable activities, verified by an independent auditor; (2) a reasonably prompt decision by an impartial decision-maker if a member objects to the way his or her mandatory dues are spent; and (3) an escrow for amounts reasonably in dispute while such objections are pending. *Id.*

112.    The USB does not satisfy any of these requirements.

113.    Although the USB offers members a partial dues refund for amounts it purports to have spent on "lobbying or legislative-related expenditures," it does not offer members any means of objecting to, or receiving refunds for, other USB activities and therefore fails to provide the safeguards that *Keller* requires.

114.    Further, the USB does not provide an adequate explanation of the basis of its dues calculations or its calculations of amounts purportedly spent on "lobbying or legislative-related expenditures" as *Keller* requires.

115.    The USB does not place any amount of a member's fees in escrow before it determines whether the member wants to fund the USB's lobbying and legislative activities.

116.    The refunds USB provides to USB members who object to paying for lobbying and legislative activities do not include interest.

117.    The USB provides no way for members to prevent their mandatory fees from being used for non-germane political and ideological speech and other non-germane activities before the fact, but only offers, at most, partial fee refunds after the fact, upon request.

118.    Therefore—assuming mandatory bar membership and fees are constitutional at all—the USB fails to provide the minimum safeguards required by the First and Fourteenth Amendments before collecting and expending mandatory member dues.

119.    The collection of mandatory dues in the absence of the minimum safeguards violates the First Amendment rights of the attorneys who are forced to pay them, including Plaintiff Amy Pomeroy.

120.    For these reasons, Defendants maintain and enforce a set of laws, practices, procedures, and policies that deprive Plaintiff Amy Pomeroy of her First and Fourteenth Amendment rights.

121.    This deprivation of constitutional rights is causing Plaintiff Amy Pomeroy to suffer irreparable injury for which there is no adequate remedy at law. Unless this deprivation of rights is enjoined by this Court, Plaintiff will continue to suffer irreparable harm.

122.    Plaintiff Amy Pomeroy is entitled to declaratory and injunctive relief against Defendants' continued enforcement and maintenance of these unconstitutional laws, practices, procedures, and policies, and is entitled to an award of attorney fees. *See* 28 U.S.C. §§ 2201, 2202; 42 U.S.C. §§ 1983, 1988.

## FOURTH CLAIM FOR RELIEF

**Compelled membership in the UBF violates attorneys' First and Fourteenth Amendment rights to free association and free speech.**

123.    The allegations in the preceding paragraphs are incorporated by reference as if fully set forth here.

124.    Compelling Utah attorneys to become mandatory members of the UBF—automatically, as a result of their mandatory membership in the USB—violates attorneys'

26

First and Fourteenth Amendment right not to associate with a private organization and not to associate with a private organization's speech.

125.   Mandatory UBF membership does not serve any compelling governmental interest.

126.   In the alternative, to the extent that UBF membership serves any governmental interest, the government may serve that interest without compelling Utah attorneys to become members of the UBF as a condition of practicing law.

127.   Defendants enforce Utah's rule compelling attorneys to become members of the UBF as a condition of practicing law by enforcing Utah's rules compelling attorneys to join and become members of, and pay fees to, the USB as a condition of practicing law.

128.   By failing to use a means significantly less restrictive of associative freedoms than a mandatory association, Defendants maintain and actively enforce a set of laws, practices, procedures, and policies that deprive Plaintiff Amy Pomeroy of her rights of free association and free speech in violation of the First and Fourteenth Amendments.

129.   This deprivation of constitutional rights is causing Plaintiff Amy Pomeroy to suffer irreparable injury for which there is no adequate remedy at law. Unless this deprivation of rights is enjoined by this Court, Plaintiff will continue to suffer irreparable harm.

130.    Plaintiff is entitled to declaratory and injunctive relief against Defendants'
continued enforcement and maintenance of these unconstitutional laws, practices,
procedures, and policies, and is entitled to an award of attorneys' fees. *See* 28 U.S.C. §§
2201, 2202; 42 U.S.C. §§ 1983, 1988.

## REQUEST FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter judgment in
Plaintiff's favor and:

A.    Declare that Defendants violate Plaintiff's rights to freedom of association
and freedom of speech under the First and Fourteenth Amendments by enforcing rules
that make membership in the USB a condition of practicing law in Utah;

B.    Declare that Defendants violate Plaintiff's rights to freedom of association
and freedom of speech under the First and Fourteenth Amendments by requiring her to
pay fees to the USB as a condition of practicing law in Utah;

C.    Declare that Defendants may not require an attorney to pay mandatory fees
to subsidize the USB's speech, including its political and ideological speech or any of its
non-germane activities, unless the member has affirmatively consented in advance to
having fees used for those purposes, as required by *Janus v. AFSCME*;

D.    Declare that Defendants violate Plaintiff's rights to freedom of association
and freedom of speech under the First and Fourteenth Amendments by enforcing rules
that make membership in the UBF a condition of practicing law in Utah;

E.      Permanently enjoin Defendants and all persons in active concert or participation with them from enforcing CJA Rules 14-101, 14-102, 14-209, and 14-802, which mandate membership in the USB and, by extension, the UBF;

F.      Permanently enjoin Defendants and all persons in active concert or participation with them from enforcing CJA Rules 14-107, 14-207, and 14-716, which require payment of membership fees to the USB;

G.      In the alternative, declare that Plaintiff's rights to freedom of speech and association under the First and Fourteenth Amendments are violated by the USB's failure to implement the minimum safeguards required by *Keller v. State Bar of California,* and preliminarily and permanently enjoin Defendants from collecting mandatory bar fees unless and until the USB adopts the minimum safeguards *Keller* requires;

H.      Award Plaintiff Amy Pomeroy her costs, attorney fees, and other expenses as provided by law, including 42 U.S.C. § 1988; and

I.      Order such additional relief as may be just and proper.

Dated: April 13, 2021.

GOLDWATER INSTITUTE

/s/ *Jacob Huebert*
Jacob Huebert
*Attorneys for Plaintiff*

29