UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AMY POMEROY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>UTAH STATE BAR, et al.,<br><br>　　　　Defendants. | **ORDER AND MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Case No. 2:21-CV-00219-TC-JCB<br><br>District Judge Tena Campbell<br><br>Magistrate Judge Jared C. Bennett |

In this civil rights suit, Plaintiff Amy Pomeroy, a licensed attorney in Utah, alleges mandatory membership in the Utah State Bar (USB) and Utah Bar Foundation (UBF) violates her First and Fourteenth Amendment rights. Defendants filed a motion to dismiss Ms. Pomeroy's Complaint. (ECF No. 68.) For the following reasons, the court GRANTS IN PART and DENIES IN PART the motion to dismiss.

## BACKGROUND[1]

The USB is a Utah non-profit corporation which Utah attorneys must join and pay an annual fee in order to practice law in Utah. John C. Baldwin is Executive Director, Heather Farnsworth is President, and Heather Thuet is President-Elect. Marty Moore, John W. Bradley, Chrystal Mancuso-Smith, Michelle Quist, Mark Morris, Mark Pugsley, Traci Gunderson, Andrew Morse, Tom Seiler, Kristin Woods, Rick Hoffman, and Shawn Newell are members of

---

[1] All factual allegations come from Ms. Pomeroy's Complaint. The court accepts them as true for purposes of this order. See Albers v. Bd. of Cnty. Comm'rs, 771 F.3d 697, 700 (10th Cir. 2014).

1

the USB's Board of Commissioners (the Board).² Baldwin and Farnsworth, along with the members of the Board, are responsible for enforcing the state's requirement that attorneys join the USB and pay annual fees to the USB to practice law in Utah. If an attorney fails to pay the annual fee, "the USB administratively suspends the attorney's license to practice law, which prohibits the attorney from practicing law in the state." (Compl. ¶ 32, ECF No. 2.)

Under the Utah Judicial Council Code of Judicial Administration (CJA) Rules, the USB is "authorize[d]" and "directe[d]" "to study and provide assistance on public policy issues and to adopt positions on behalf of the Board." (Compl. ¶ 38, ECF No. 2 (citing CJA Rule 14-106(a).)³ The USB has advocated for and against substantive Utah legislation, including taxation of legal services, whether the state attorney general can invoke a potential conflict of interest or attorney-client privilege to withhold release of an opinion requested by the legislature, and how Utah selects judges. Additionally, the USB uses member dues to fund the *Utah Bar Journal*, which "take[s] or publicize[s] positions on current controversies," including by touting the importance of "equity" as distinct from "equality," invoking the concept of implicit bias, calling for courtrooms to be a "safe space" for allegations of unfairness, and reviewing a book that proposes criminal penalties for anyone who protects an institution in which a sexual assault occurs. (Compl. ¶ 50, ECF No. 2.)

---

[2] In Defendants' Reply in Support of Motion to Dismiss, they explain that since the outset of the suit, "five of the individuals holding the official capacities named in the Complaint have been changed. . . First, Elizabeth Wright became Executive Director of the Utah State Bar, replacing John C. Baldwin. Second, Heather Thuet because the President, replacing Heather Farnsworth. Third, Krist[i]n Woods became President-Elect, replacing Heather Thuet. Fourth, Gregory N. Hoole became a 3rd Division Commissioner, replacing Mark Pugsley. Fifth, Tyler S. Young became a 4th Division Commissioner, replacing Tom Seiler." (ECF No. 78.)

[3] The CJA rules further instruct that the USB may take positions on the following public policy issues: "issues concerning the courts of Utah, procedure and evidence in the courts, the administration of justice, the practice of law, and matters of substantive law on which the collective expertise of lawyers has special relevance and/or which may affect an individual's ability to access legal services or the legal system." (Compl. ¶ 40, ECF No. 2 (citing CJA Rule 14-106(a)(1)).)

Within the *Utah Bar Journal*, the USB publishes notice of member-attorneys' right to receive a rebate of the portion of their dues used for lobbying and legislative matters. Members may not prevent their dues from being used for lobbying purposes before the fact, and the USB does not provide information about how it determines which expenditures are classified as lobbying and legislative-related. The USB does not offer a means to object to or receive refunds for other, non-lobbying or legislative USB activities. Nor does the annual budget made available to members identify specific expenditures, only general categories.

Ms. Pomeroy, who lives in Orem, is an attorney duly licensed under the laws of Utah. She is a member of the USB and pays its annual fee solely because it is a mandatory prerequisite to practicing law in Utah. Ms. Pomeroy does not want to associate with the USB or USF and opposes the use of any of her mandatory fees to "fund any amount of political or ideological speech, regardless of its viewpoint." (Compl. ¶ 68, ECF No. 2.) She also objects to the lack of safeguards available to allow attorneys to opt out of paying for political and ideological speech.

On April 14, 2021, Pomeroy filed her Complaint against the USB, Baldwin, Farnsworth, Thuet, and the members of the Board. (ECF No. 2.) The Complaint brings four causes of action under 28 U.S.C. § 2201 and 42 U.S.C. § 1983, alleging the following practices violate her First and Fourteenth Amendment rights to free speech and free association: (1) compelled membership in the USB, (2) the USB's collection of mandatory bar dues, (3) failing to provide safeguards to ensure mandatory dues are not used for impermissible purposes, and (4) compelled membership in the UBF. Defendants now ask the court to dismiss each of Ms. Pomeroy's causes of action. (ECF No. 68.) The court turns to the party's arguments.

/ / /

/ / /

## **LEGAL STANDARDS**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint "must plead facts sufficient to state a claim to relief that is plausible on its face." Slater v. A.G. Edwards & Sons, Inc., 719 F.3d 1190, 1196 (10th Cir. 2013) (internal quotation marks omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim is facially plausible when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Burnett v. Mortg. Elec. Registration Sys., Inc., 706 F.3d 1231, 1235 (10th Cir. 2013) (quoting Iqbal, 556 U.S. at 678). The court must accept all well-pleaded allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Albers, 771 F.3d at 700. The court's function is "not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991)).

Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction take two forms: facial attacks and factual attacks. Laufer v. Looper, 22 F.4th 871, 875 (10th Cir. 2022). A facial attack challenges the sufficiency of the complaint, while a factual attack presents additional evidence. Muscogee (Creek) Nation v. Okla. Tax. Comm'n, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010). Defendants bring a facial attack. In evaluating a facial attack, the court "must accept the factual allegations in the complaint as true," Safe Streets All. v. Hickenlooper, 859 F.3d 865, 878 (10th Cir. 2017) and "apply a standard patterned on Rule 12(b)(6)." Garling v. EPA, 849 F.3d 1289, 1293 n.3 (10th Cir. 2017).

/ / /

## ANALYSIS

Defendants argue the Complaint should be dismissed pursuant to Rule 12(b)(1) because the USB is immune from suit under the Eleventh Amendment and Ms. Pomeroy lacks Article III standing because her alleged injury is not redressable. Defendants further argue that even if Ms. Pomeroy establishes standing, she has failed to adequately allege her claims and the Complaint should be dismissed pursuant to Rule 12(b)(6). The court will address the Eleventh Amendment immunity, Article III standing, and Rule 12(b)(6) arguments in turn.

### I.     The USB Has Eleventh Amendment Immunity from Suit

The Eleventh Amendment precludes unconsented suits in federal court against a state or an arm of the state. See, e.g., Wagoner Cnty. Rural Water Dist. No. 2. v. Grand River Dam Auth., 577 F.3d 1255, 1258 (10th Cir. 2009). An arm of the state is an entity created by a state government which operates as an alter ego or instrumentality of the state. See Watson v. Univ. of Utah Med. Ctr., 75 F.3d 569, 574 (10th Cir. 1996). This court has previously held the USB is an arm of the state because it acts as an alter ego of the Utah Supreme Court. Rose v. Utah State, No. 2:09-cv-695-TC, 2009 WL 5066687, at *4 (D. Utah Dec. 16, 2009). In Rose, to determine the USB's arm of the state status, the court considered how state laws characterize the USB. Id. at *3 (citing Sturdevant v. Paulsen, 218 F.3d 1160, 1164 (10th Cir. 2000)). The court held that because the Utah Constitution gives the Utah Supreme Court exclusive authority to govern the practice of law, and because the Utah Supreme Court promulgates the Rules under which the USB functions, the USB was an alter ego of the Utah Supreme Court and, therefore, an arm of the state. Id. at *3–*4 (citing Utah State Bar v. Summerhayes & Hayden, Pub. Adjusters, 905 P.2d 867, 870 (Utah 1995)).

Ms. Pomeroy nonetheless argues that under Watson, the USB is not an arm of the state because it has relative autonomy from the state since the members elect commissioners, and because it is financed independently from the state treasury. (ECF No. 74 at 8.) Defendants respond that despite the fact commissioners are elected, the USB does not enjoy significant autonomy concerning the issues in the suit—mandatory membership and license fee rules— because the Utah Constitution has vested the Utah Supreme Court has "reserved substantial control over the membership and license fee rules challenged in this suit." (ECF No. 78 at 3.) As to the USB's independent funding, Defendants note entities can retain Eleventh Amendment immunity even if a judgment would have no impact on the state's finances. (ECF No. 78 at 3 (citing Regents of the Univ. of Calif. v. Doe, 518 U.S. 425, 431 (1997).)

The court agrees with Defendants. The Tenth Circuit has explained that the central inquiry is whether an entity is more like an arm of the state or a political subdivision. See Sturdevant, 218 F.3d at 1164. The factors Ms. Pomeroy relies on, as enumerated in Watson, are simply an "elaborat[ion]" of that central inquiry, which originates from a Supreme Court decision. Id. (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977)).[4] As the court previously observed in Rose, the Utah Constitution gives the Utah

---

[4] Defendants argue that a more recent arm-of-the-state test applies. See ECF No. 68 at 11 (citing Couser v. Gay, 959 P.3d 1018, 1024 (10th Cir. 2020)). Under the Couser test, the court considers: (1) the entity's character under state law, (2) the degree of control exercised by the state, (3) the entity's finances, and (4) whether the entity is primarily concerned with local or state affairs. Couser, 959 P.3d at 1024. Defendants argue each of these factors weighs in favor of immunity, and further argue that several circuits have used a similar test to find state bar associations have Eleventh Amendment immunity. See ECF No. 78 at 1 n.2 (collecting cases). The Couser test is essentially a more granular version of the Mt. Healthy test, which determines whether the entity is more like an arm of the state or a political subdivision. Compare Sturdevant, 218 F.3d at 1164 (citing Mt. Healthy, 429 U.S. 274 at 280) with Couser, 959 P.3d at 1024 (citing Mt. Healthy, 429 U.S. at 280)). Because Couser, Sturdevant, and Watson each apply the Mt. Healthy test, the court does not choose between them but notes that under any breakdown of the factors, the USB would be considered an arm of the state due to its characterization under state law and the high degree of control the Utah Supreme Court maintains over it. See also Sturdevant, 218 F.3d at 1170 ("Because of the open-ended nature of the arm-of-the-state analysis, it is easy to become caught up in the minutiae of state law . . . These details, however, must not eclipse a fundamental distinction that emerges from Mt. Healthy . . . between alter egos or instrumentalities of states on the one hand, and political subdivisions such as cities and counties on the other.").

Supreme Court the power to govern the practice of law and promulgates the Rules under which the USB functions, including those rules concerning mandatory membership and fees. This makes the USB an alter ego of the state and therefore an arm of the state; it is not analogous to a municipality or political subdivision under the Watson test as Ms. Pomeroy argues. See Rose, 2009 WL 5066698, at *4. Because the USB is an arm of the State, it is immune from suit under the Eleventh Amendment. All claims brought against the USB must, therefore, be dismissed.

However, the other defendants will not be dismissed on the basis of Eleventh Amendment immunity, as requested in the motion to dismiss. While the Eleventh Amendment "does not permit judgments against state officers declaring they violated federal law in the past," the Ex parte Young exception allows a suit against state officials in their official capacities to prevent the ongoing violation of federal law. See, e.g., Johns v. Stewart, 57 F.3d 1544, 1554–55 (10th Cir. 1995) (citing Ex parte Young, 209 U.S. 123, 159–60 (1908)). Because Ms. Pomeroy seeks to enjoin the future enforcement of the USB's rules concerning mandatory membership and fees, Eleventh Amendment immunity does not apply to the remaining defendants.

**II.     Ms. Pomeroy Has Standing to Challenge the Remaining Defendants**

To survive a 12(b)(1) motion to dismiss based on standing, a plaintiff must demonstrate that: "(1) she has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision." Winsness v. Yocom, 433 F.3d 727, 731–32 (10th Cir. 2006) (citation omitted). Defendants argue Ms. Pomeroy has not alleged the third prong: redressability. To determine whether the redressability prong is adequately alleged at the pleading stage, without "prejudging the merits," the court must determine whether a favorable decision on the merits could redress

the alleged injuries on the facts alleged, accounting for the flexibility of injunctive relief. Petrella v. Brownback, 697 F.3d 1285, 1294–95.

A defendant must have authority to enforce a challenged statute or rule to meet the redressability prong. See Bronson v. Swensen, 500 F.3d 1099, 1111 (10th Cir. 2007). Whether Defendants have enforcement authority is "related to whether, under Ex parte Young, they are proper state officials for suit." Kitchen v. Herbert, 755 F.3d 1193, 1201 (10th Cir. 2014) (internal quotation marks and citation omitted).[5] "Under Ex parte Young, a state defendant sued in his official capacity must have some connection with the enforcement of a challenged provision. An officer need not have a special connection to the allegedly unconstitutional statute; rather, he need only have a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." Id. (internal quotation marks and citations omitted).

Defendants argue Ms. Pomeroy lacks standing to sue because the injuries she alleges cannot be redressed by a ruling enjoining the USB officials from enforcing the rules concerning membership and payment of license fees. Rather, USB officials "merely administer the rules as agents of the Utah Supreme Court, which retains ultimate enforcement authority." (ECF No. 68 at 16.) Ms. Pomeroy responds that an injunction against the Defendants would prevent enforcement of the mandatory membership and fee rules, redressing the injury she has alleged.

The court agrees with Ms. Pomeroy. In Kitchen, the Tenth Circuit found plaintiffs had standing to sue a county clerk for refusing to issue marriage licenses because an injunction prohibiting enforcement of a state constitutional amendment (which, at the time, prohibited same-sex marriage) would redress their alleged injuries by requiring the clerk to issue

---

[5] Defendants argue that Ms. Pomeroy's reliance on cases in the Ex parte Young line is "inapposite" because Article III standing and the Ex parte Young exception to Eleventh Amendment immunity are "distinct constitutional doctrines." (ECF No. 78 at 4.) However, as Kitchen makes clear, these distinct constitutional doctrines employ related considerations which the court may properly weigh.

certificates.  Kitchen, 755 F.3d at 1201–02.  Notably, the Kitchen court also determined plaintiffs had standing to sue the Utah Governor and Attorney General because they had legal authority to ensure county clerks enforced the law.  Id. at 1202–04.  However, the Kitchen court did not hold that because the governor and attorney general had "ultimate enforcement authority," they were the *only* proper defendants, as the Defendants here imply as to the Utah Supreme Court.  Rather, for purposes of standing analysis, the redressability prong is met as long as the official in question has "clearly . . . assisted or currently assist in giving effect to the law."  Id. at 1204 (citing Prairie Band Potawatomi Nation v. Wagnon, 476 F.3d 818, 828 (10th Cir. 2006)).

      Here, Ms. Pomeroy has alleged Defendants enforce the rules she challenges by administratively suspending the licenses of attorneys who fail to pay annual membership fees.  Notably, Defendants echo this characterization.  (ECF No. 68 at 17.)  Therefore, on the facts alleged, an injunction against the Defendants would prevent the enforcement of the USB's membership and fees requirements against Ms. Pomeroy, redressing her alleged injuries.  At the motion to dismiss stage, these allegations are sufficient.  Accordingly, Ms. Pomeroy has adequately alleged standing against the individual Defendants, and the claims against them will not be dismissed pursuant to Rule 12(b)(1).

### III.    Ms. Pomeroy's Complaint Adequately States Two Causes of Action

      Ms. Pomeroy's complaint states four causes of action, each seeking declaratory and injunctive relief under 28 U.S.C. §§ 2201, 2202 and 42 U.S.C. §§ 1983, 1988 for violations of the First and Fourteenth Amendment rights to free speech and association. Her first claim concerns compelled membership in the USB.  Her second claim concerns the USB's collection of mandatory bar dues.  The third claim concerns the USB's failure to provide safeguards to prevent mandatory dues from being used for impermissible purposes.  The fourth claim concerns

compelled membership in the UBF. The Defendants move to dismiss each claim under Rule 12(b)(6). The court will discuss each claim in turn.

### A. Ms. Pomeroy's Claim Based on Compelled Membership in the USB Survives

Under Keller v. State Bar of California, conditioning the right to practice law on bar membership is not itself a free speech or association violation: a state bar may "constitutionally fund activities germane to those goals out of the mandatory dues of all members." Keller v. State Bar of California, 496 U.S. 1, 14 (1990). An activity or expenditure is germane under Keller if it pertains to "regulating the legal profession" or "improving the quality of the legal service available to the people of the State." Id. at 14 (internal quotation marks omitted) (citing Lathrop v. Donahue, 367 U.S. 820, 843 (1961). As such, a state bar may not "fund activities of an ideological nature which fall outside those [germane] areas of activity." Id. A plaintiff may bring a First Amendment challenge to mandatory bar membership where she has alleged "at least some of a state bar's actions might not be germane to regulating the legal profession and improving the quality of legal services in the state." Schell v. Chief Just. & Justs. of Okla. Sup. Ct., 11 F.4th 1178, 1194 (10th Cir. 2021). The parties disagree as to whether Ms. Pomeroy has adequately alleged the USB has funded non-germane activities or speech, as necessary to allege a First Amendment violation arising from her compelled membership in the USB.[6]

The lobbying and legislative activities of the USB that Ms. Pomeroy identifies as non-germane include: (1) lobbying against a proposed state tax on services which would have applied to legal services, (2) lobbying against legislation affecting the attorney general's ability to invoke

---

[6] Ms. Pomeroy also argues that because Keller relied on logic from Abood v. Detroit Bd. of Ed., 431 U.S. 209 (1977), which was overruled in 2018 by Janus v. Am. Fed'n of State, Cnty., and Mun. Emps., Council 31, 138 S. Ct. 2448 (2018), Keller no longer controls and the court should apply strict scrutiny to the association claim, as in Janus. However, the Tenth Circuit has since held that because the Supreme Court has yet to reconsider Keller, it is still binding law. See Schell, 11 F.4th at 1190. Accordingly, this court uses the framework explicated in Keller.

a conflict of interest or attorney-client privilege to withhold release of an opinion requested by the legislature, and (3) lobbying against a proposal to change Utah's merit-based judicial selection to one based on non-partisan elections. Ms. Pomeroy additionally alleges that certain articles published and statements made in the *Utah Bar Journal*, which is funded by the USB with member dues, were non-germane, including: (1) a statement from the USB's president on the importance of equity as distinct from equality, (2) articles invoking the concept of implicit bias, (3) an article calling for courtrooms to be safe spaces for allegations of unfairness, and (4) a review of a book which advocates punishing those who become aware of a sexual assault and protect the institution where the assault occurs. (Compl. ¶¶ 42–50, ECF No. 2.)

At the motion to dismiss stage, construing all facts in the light most favorable to Ms. Pomeroy, she has adequately alleged the USB has funded non-germane activities through its lobbying activities and publication of statements in the *Utah Bar Journal*. The Tenth Circuit recently held in Schell that plausible allegations two articles in a state bar journal "strayed from the germane purposes of the [bar association] and discussed matters in an ideological matter" were sufficient to support a freedom of association challenge. Schell, 11 F.4th at 1194. The Schell court explained, "views on the appropriateness of 'big money and special interest groups' in elections . . . often break along political lines." Id. Therefore, an article invoking the topic of "big money and special interest groups" plausibly had "an ideological tinge," especially in context of other allegations in the complaint. Id. In contrast, the Schell court found articles encouraging attorneys to warn the public about the harms of politics in the judicial system, responding to criticism of the merit-based process for selecting judges, and discussing the role of attorneys in the state legislature were germane to the goal of improving the quality and availability of legal services. Id. at 1193.

11

Viewing the allegations in the light most favorable to Ms. Pomeroy, the Complaint plausibly identifies articles in the March/April 2021 Utah Bar Journal that could be non-germane. Invoking the concept of implicit bias, discussing the important of equity as a distinct concept from equality, and reviewing a book which advocates punishing people who protect an institution where a sexual assault occurred are all topics that could plausibly be seen as having an "ideological tinge," and express viewpoints that could "break along political lines." These topics plausibly stray from the goals of regulating the legal profession and improving the quality of legal services by taking ideological positions and addressing broader public policy issues.[7]

In addition, Ms. Pomeroy plausibly alleges some of the USB's legislative activities are non-germane. For example, she identifies the USB's opposition to the "Tax Equalization and Reduction Act." (Compl. ¶ 43, ECF No. 2.) The Act proposed a new tax on services broadly in the state of Utah, which would include legal services. Ms. Pomeroy argues, and the court agrees, this is not necessarily germane because the tax does not directly pertain to regulating the legal profession or the quality of legal services, but only the cost of legal services, an argument which could be used to allow the USB to lobby for or against the imposition of any generally applicable tax. Additionally, Ms. Pomeroy plausibly alleges that taking a position on proposed legislation affecting the attorney general's ability to invoke a potential conflict of interest or attorney-client

---

[7] The statements fare no better in context. See ECF No. 68-1: Utah Bar Journal March-April 2021. For instance, Ms. Pomeroy's allegation about an article "calling for courtrooms to include a 'safe space'" comes from an article titled "The Road to Solutions: Systemic Racism and Implicit Bias in Prosecution," an article which heavily invokes the concepts of implicit bias and institutional racism. Id. at 26–27. Opinions on these concepts often "break along political lines," and the article has at least an "ideological tinge" in calling for prosecutors to examine their implicit biases, even if prosecution is obviously related to the practice of law. See Schell, 11 F.4th at 1194. While this article was written by contributors, Ms. Pomeroy alleges the USB publishes the Bar Journal with member fees. At the motion to dismiss stage, this is sufficient to plausibly allege bar officials have funded non-germane activities. See id. at 1184, 1194 (allegations a state bar used mandatory member dues to "publish political and ideological speech" sufficient at the motion to dismiss stage); see also GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1385 (10th Cir. 1997) (a document referred to in a complaint may be considered on a motion to dismiss without converting it to a motion for summary judgment).

privilege was non-germane. Defendants argue without analysis this proposed legislation was "a direct regulation of the legal profession." (ECF No. 68 at 22.) However, the attorney general is an elected official in Utah, and proposed legislation affecting the attorney general's practices vis-à-vis the Utah State Legislature goes far beyond regulating the legal *profession*, and instead affects the office of a separate public official.[8] As such, Ms. Pomeroy has plausibly alleged the USB engages in lobbying activities that go beyond public policy issues affecting the regulation of the legal profession or the quality of legal service.[9]

In summary, Ms. Pomeroy has sufficiently alleged that the Defendants engage in non-germane activities. Therefore, she has sufficiently stated a claim for violation of her freedom of speech and freedom of association rights based on mandatory membership in the USB.

### B. Ms. Pomeroy's Claim Concerning the USB's Mandatory Bar Dues Fails

In Opposition, Ms. Pomeroy acknowledges this claim would be foreclosed if the Tenth Circuit denied rehearing in Schell,[10] which considered a challenge to the Oklahoma State Bar's mandatory fees and found they were permitted by the First Amendment. See Opposition at 17

---

[8] The court agrees with Defendants that Ms. Pomeroy's third identified legislative position—the USB's position on Utah's merit-based system for selecting judges—does relate to the regulation of the legal profession. See Schell, 11 F.4th at 1193 (article responding to criticism of state's merit-based process for selecting judges is germane to regulating the legal system). However, because Ms. Pomeroy has plausibly identified other non-germane activities, the fact that some are germane means she has adequately stated a claim under Keller. See id. at 1194 (holding Keller does not foreclose freedom of association challenge where some activities are germane and some are not).

[9] The Defendants' arguments to the contrary are unavailing. In their motion, Defendants rely heavily on McDonald v. Longley, a recent Fifth Circuit case which, at summary judgment, determined the publication of the *Texas Bar Journal* was germane under Keller. 4 F.4th 229, 251–52 (5th Cir. 2021). Putting aside the fact that McDonald's analysis is not binding and arises in a different procedural posture, that case does not contain a detailed analysis of the germaneness of articles as Schell does, and Defendants cite parts of the opinion which pertain to diversity efforts, not bar journal articles. See ECF No. 68 at 25 (citing McDonald, 4 F.4th at 249 (discussing the State Bar of Texas's diversity initiatives)). Similarly, Defendants argue that the *Utah Bar Journal* should be designated as a non-public forum and the speech in the journal can only be attributed to the bar if it "determines the content" of the speech. (ECF No. 68 at 24–25 (citing Rosenberg v. Rector & Visitors of the Univ. of Va., 515 U.S. 819, 833 (1995)).) But Ms. Pomeroy's Complaint contains allegations the USB funds the *Utah Bar Journal*, publishes statements from the USB's president in the *Journal*, and engages in political and ideological speech using the Bar Journal. This is sufficient at the pleading stage to allege the USB "determines the content" of the *Utah Bar Journal*.

[10] 2 F.4th 1312 (10th Cir. 2021), opinion withdrawn and superseded on reh'g, 11 F.4th 1178 (10th Cir. 2021).

13

n.5. A week after Ms. Pomeroy's opposition was filed, the Tenth Circuit granted in part the petition for rehearing to the extent its opinion was modified in a revised opinion, but denied the petition for rehearing en banc. See Schell, 11 F.4th at 1182. The modified opinion did not change the holding concerning mandatory bar dues. Id. at 1194 n.10. Accordingly, the second claim for relief is foreclosed, a fact Ms. Pomeroy acknowledged at oral argument. Having been conceded, the second claim for relief is dismissed (though the court notes Ms. Pomeroy has preserved this issue for appellate review).

### C. Ms. Pomeroy's Claim for Lack of Procedural Safeguards Survives

Because integrated bars cannot use compulsory dues to fund non-germane activities, Keller held integrated bars must provide a refund mechanism for non-germane activities. Keller, 496 U.S. at 16–17. The Keller court held integrated bars satisfy this obligation when they adopt a procedure modeled on Teachers v. Hudson, 475 U.S. 292 (1986) which outlined a "minimum set of procedures by which a union in an agency-shop relationship could meets its requirement under Abood," namely: "an adequate basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." Keller, 496 U.S. at 16–17 (internal quotation marks and citations omitted). The Keller court reserved the question of whether an alternative procedure would satisfy that obligation because it did not have a fully developed record on which to consider the question. Id. at 17. But regardless of what type of procedure might be appropriate,[11] because Defendants concede they do not provide any refund mechanism for non-lobbying activities, the motion to dismiss the third claim must be denied.

---

[11] In the decades since Keller was decided, the Supreme Court has not returned to the issue, and the Tenth Circuit has not provided guidance on refund mechanisms. The Ninth Circuit recently held an integrated bar did not need to strictly follow the Hudson procedures because that bar "provide[d] procedures adequately tailored to minimize the infringement of its members first amendment rights." Crowe v. Oregon State Bar, 989 F.3d 714, 726 (9th Cir.

In their motion, Defendants argue because the USB will refund any member's pro rata share of bar dues spent on legislative and lobbying activities, not just non-germane legislative and lobbying, it is "over-inclusive" about the speech that triggers a refund, and therefore need not comply with the strictures of Hudson.  (ECF No. 68 at 27.)  In opposition, Ms. Pomeroy argues that while the USB offers a refund for lobbying or legislative-related activities, it does not provide a means of objecting to, or receiving refunds for, non-lobbying USB activities that may not be germane, nor does it provide a mechanism to dispute whether activity is properly deemed lobbying or legislation-related. (ECF No. 74 at 21, citing Compl. ¶ 113.)  In reply, Defendants concede: "Pomeroy is correct that the [USB]'s refund policy does not allow refunds for non-germane non-lobbying activities."  ECF No. 78 at 10.  However, they argue that Pomeroy has "alleged no such activities," and thus would be seeking an advisory opinion.

But in fact, as discussed above, the court already concluded that Pomeroy sufficiently alleged the USB engages in non-germane activities by funding the *Utah Bar Journal*, which, she alleges, contains non-germane speech.  See also Schell, 11 F.4th at 1194 (holding publication of bar journal can constitute non-germane activity.)  Defendants therefore concede that they provide no mechanism whatsoever to seek refunds for that potentially non-germane activity.  As such, they fail to meet the baseline requirement created by Keller that refunds be made available for non-germane activities.  Accordingly, the court need not determine at this stage what sort of refund procedure is adequate under Keller as Defendants have conceded they provide no refund policy for non-germane non-lobbying activities.  Because the Defendants admit they do not

---

2021), cert. denied sub nom. Gruber v. Oregon State Bar, 142 S. Ct. 78, 211 L. Ed. 2d 15 (2021), and cert. denied, 142 S. Ct. 79, 211 L. Ed. 2d 15 (2021) (internal quotation marks and citation omitted).  The Fifth Circuit disagrees, finding the Hudson procedures are "the Constitutional floor" that an integrated bar must meet.  Boudreaux v. Louisiana State Bar Association, 3 F.4th 748, 758 (5th Cir. 2021).

comply with the Supreme Court's guidance concerning refund procedures, this argument fails and the third claim will not be dismissed.

### D. Ms. Pomeroy's Claim for Compelled Membership in UBF Fails

The legal standards discussed supra regarding compelled membership in the USB apply equally to Ms. Pomeroy's allegations concerning the UBF. As such, to state a claim for relief, Ms. Pomeroy must allege the UBF has funded activities that are not germane to its valid goals and purposes. See Schell, 11 F.4th at 1192. However, the Complaint is devoid of any specific factual allegations concerning the UBF. The only paragraph which contains any UBF-related allegations states: "Utah's requirement that all attorneys be members of the UBF injures [Ms. Pomeroy] because she does not wish to associate with the UBF or any political or ideological speech or other activities that it may engage in; she wishes to decide for herself which charitable and advocacy organizations she will and will not associate with and contribute to." (Compl. ¶ 74, ECF No. 2.) This paragraph does not allege any factual content describing the "political or ideological speech or other activities" the UBF engages in. In opposition, Ms. Pomeroy argues that it is "beyond dispute that the UBF is a 501(c)(3) nonprofit organization, separate from the USB, that makes donations to various other organizations," and further explains discovery is necessary to determine which organizations the UBF has supported as that information has been removed both from the UBF website and past archived versions of the website. ECF No. 78 at 24 n.7. However, these allegations appear nowhere in the Complaint.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a claim]." Iqbal, 556 U.S. at 678 (internal citation omitted.) Without alleging any facts that could allow the court to make the inference that the UBF has engaged in non-germane activities, the claim fails and must be dismissed.

**CONCLUSION**

For the reasons stated above, the Defendants' Motion to Dismiss (ECF No. 68) is GRANTED IN PART and DENIED IN PART. All claims brought against the Utah State Bar are dismissed. The second claim for relief against the remaining defendants is dismissed per Ms. Pomeroy's concession. The fourth claim for relief brought against the remaining defendants is dismissed for failure to state a claim pursuant to Rule 12(b)(6). The first and third claims brought against the remaining defendants are not dismissed.

SO ORDERED this 4th day of April, 2022.

BY THE COURT:

TENA CAMPBELL
United States District Judge